

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 6, 2016

The Honorable Micheal E. Jimerson
Rusk County and District Attorney
115 North Main Street, Suite 302
Henderson, Texas 75652

Opinion No. KP-0101

Re: Whether the Rusk County school district tax violates article VIII, section 1-e of the Texas Constitution (RQ-0090-KP)

Dear Mr. Jimerson:

You ask whether it is problematic under article VIII, section 1-e that tax proceeds are being used to support an independent school district that serves students in a neighboring county.[1] You tell us that the Rusk County School Board ("school board"), like the county education districts considered in the *Carrollton-Farmers Branch Independent School District v. Edgewood Independent School District* opinion, performs no educational duties. *See* Request Letter at 1; *see also Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 498 (Tex. 1992) (*Edgewood III*). You suggest that because "there are school districts that cross county lines, resulting in the tax being used to subsidize another county's rates[,] there is no distinction to a Rusk County citizen between this system and the system [p]ronounced [u]nconstitutional by the Texas Supreme Court." Request Letter at 1. You inform us the tax was approved by the voters at an election in 1940. *See id.* You also inform us that the school board's distribution of the tax proceeds to the school districts in Rusk County is determined by student attendance at each school. *See id.* You state that some of the school districts "overlap with other counties and serve students from both counties," and that the funds are not limited to only the county from which they were collected. *See id.* 1–2. You liken the school board to a county education district that the Texas Supreme Court held unconstitutional in 1992 in its *Edgewood III* opinion. *See id.* at 1.

In *Edgewood III*, the Texas Supreme Court considered a challenge to the State's school financing system under several provisions of the Texas Constitution. *See Edgewood III*, 826 S.W.2d at 493. One provision, article VIII, section 1-e, provides that "[n]o State ad valorem taxes shall be levied upon any property within this State." TEX. CONST. art. VIII, § 1-e. At issue in *Edgewood III* was ad valorem taxation by county education districts. *See Edgewood III*, 826 S.W.2d at 498. The Legislature created county education districts in response to the Texas Supreme Court's holding the prior system of school financing unconstitutional. *See id.; see also*

---

[1]*See* Letter from Honorable Micheal E. Jimerson, Rusk Cty. & Dist. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Jan. 7, 2016), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

*Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491 (Tex. 1991) ("*Edgewood II*"). These county education districts had no educational duties. *Edgewood III*, 826 S.W.2d at 498 ("They employ no teachers, provide no classrooms, and educate no children."). Instead, they were created to "ameliorate disparities among school districts due to local property wealth." *Id.* Their function was to levy an ad valorem tax to supplement the local funding required under the school financing system. *See id.* Not only did the Legislature require that the county education district levy an ad valorem tax, it also effectively established the tax rate. *See id.* at 498, 500. Similarly, the Legislature directed the distribution of the tax proceeds. *See id.* at 498–99. These facts led the Court to state that "[i]f the State mandates that a tax be levied, sets the rate, and prescribes the distribution of the proceeds, the tax is a state tax." *Id.* at 500. Thus, the Court said of article VIII, section 1-e that "[a]n ad valorem tax is a state tax when it is imposed directly by the State or when the State so completely controls the levy, assessment, and disbursement of revenue, either directly or indirectly, that the authority employed is without meaningful discretion." *Id.* at 501–02 (stating that county education districts "are mere puppets; the State is pulling all the strings"); *see also id.* at 503–07 (concluding the tax, imposed without an election, also violated Texas Constitution article VII, section 3, which requires an ad valorem tax imposed by a school district to be approved by the electorate).

The tax you describe is a local county equalization tax governed by former chapter 18 of the Texas Education Code, not a statewide tax.[2] *See generally* Request Letter at 1–2 (including former chapter 18 of the Education Code as an attachment to the Request Letter). Chapter 18 authorizes the creation and levy of a "countywide equalization tax for the maintenance of the public schools." TEX. EDUC. CODE, tit. 2, app. § 18.01; *see also id.*, tit. 2, app. § 18.02(a) (validating "[a]ll actions heretofore taken in establishing in any county a countywide equalization fund"). Chapter 18 was repealed in 1995, but a school district or county system operating thereunder on May 1, 1995, "may continue to operate under the applicable chapter as that chapter existed on that date." TEX. EDUC. CODE § 11.301; *see also id.*, tit. 2, app. §§ 18.01–.30. In chapter 18, the Legislature established a maximum rate for a countywide equalization tax. *See id.*, tit. 2, app. § 18.12(a). The Legislature also provided for the distribution of the proceeds of the equalization tax. *See id.*, tit. 2, app. § 18.14(a)–(c) (requiring that funds shall be distributed to the school districts of the county "on the basis of the average daily attendance" and providing that a "county-line district shall be eligible to receive its per capita apportionment based upon the number of scholastic pupils residing in the county of the equalization district").

The use of tax proceeds for the support of a school district that overlaps into another county was not the constitutional infirmity of county education districts in *Edgewood III*. *See generally Edgewood III*, 826 S.W.2d at 500–14 (discussing constitutional challenges). Moreover, under *Edgewood III*, the performance of educational duties versus taxing functions is not the standard by which to find a violation of article VIII, section 1-e. *See id.* Rather, the standard for article VIII, section 1-e is whether the State so controls the levy, assessment, and disbursement of revenue that the tax is essentially directed by the State such that the taxing entity has no meaningful discretion

---

[2]*See* Act of June 2, 1969, 61st Leg., R.S., ch. 889, §§ 18.01–.30, 1969 Tex. Gen. Laws 2735, 2848–56, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58, 1995 Tex. Gen. Laws 2207, 2498, *reprinted in* TEX. EDUC. CODE, tit. 2, app. (Title 2–Appendix–Former Chapters with Continued Application).

with respect to the tax. *See id.* at 502. Certainly, under former chapter 18, the Legislature established the formula for the use of the tax proceeds for the school districts of the county and thus could be seen as directing the disbursement of the funds. *See* TEX. EDUC. CODE, tit. 2, app. § 18.14. Yet, the imposition of a county equalization tax is discretionary. *See id.*, tit. 2, app. § 18.03(b) (providing that countywide school district "*may* . . . exercise in and for the . . . county . . . the tax power conferred" by the Texas Constitution (emphasis added)). And though former chapter 18 sets a maximum tax rate, it does not affirmatively establish the actual rate to be imposed. Instead, it gives discretion to the managing trustees of the countywide school district to determine the tax rate. *See id.*, tit. 2, app. § 18.25(a). It is not apparent that the Legislature controls a county equalization tax to the same extent it controlled the county education district tax in *Edgewood III*. Some may validly question the wisdom of imposing a county equalization tax in addition to those imposed by a school district. However, to the extent chapter 18 provides the school board with meaningful discretion to levy, set the rate, and provide for the disbursement of the equalization tax, a court is likely to determine that the county equalization tax does not violate article VIII, section 1-e of the Texas Constitution.

## S U M M A R Y

In *Carrollton-Farmers Branch Independent School District v. Edgewood Independent School District,* the Texas Supreme Court determined that an ad valorem tax imposed by county education districts was unconstitutional under article VIII, section 1-e of the Texas Constitution because the levy, assessment, and disbursement of revenue was so directed by the State that the tax amounted to a state ad valorem tax. A county equalization tax under former chapter 18 of the Education Code appears to provide a county school board operating thereunder meaningful discretion with regard to the tax such that a court could determine that the tax is not similarly constitutionally infirm under article VIII, section 1-e.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee